**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| MARCIA M. EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACT. NO. 2:22-cv-144-TFM-MU |
| | ) |
| PNC BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is *Defendant's Motion for Summary Judgment and Incorporated Brief in Support*.  Doc. 22, filed June 20, 2023.  Defendant PNC Bank, N.A., motion the Court enter summary judgment against Plaintiff Marcia M. Edwards as to all of her claims that she has brought against it.  Having considered the motion, response, reply, and relevant law, the Court finds the motion is due to be **GRANTED in part and DENIED in part**.

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated.  The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of

continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

On July 31, 1985, Plaintiff Marcia M. Edwards ("Plaintiff") and her husband, Cleveland Edwards, were granted a warranty deed that transferred the property, commonly known as 323 McDonald Avenue, Selma, Alabama, 36701 ("the Property").  Doc. 1-1 at 4; Doc. 22-2.  On the same date, Marcia and Cleveland Edwards executed a mortgage in favor of the Cameron-Brown Company ("the Original Mortgage").  Doc. 22-3.  The Original Mortgage encumbered the Property and was recorded on July 31, 1985, at book 961, page 147 of the Dallas County, Alabama probate records.  *Id.*

On September 12, 2006, a future advance mortgage ("the Subject Mortgage") was executed in favor of AmSouth Bank.  Doc. 22-4.  The Subject Mortgage encumbered the Property and was executed to secure a $65,000 line of credit.  *Id.*  The Subject Mortgage purportedly bears the signatures of both Marcia and Cleveland Edwards.[1]  *Id.*  The Subject Mortgage was recorded on October 3, 2006, at book 1355, page 427 of the Dallas County, Alabama probate records.  *Id.*

Also on September 12, 2006, Cleveland Edwards executed a Credit Agreement and Disclosure that extended to him the $65,000 line of credit from AmSouth Bank ("the Credit Agreement") and was secured by the Subject Mortgage (collectively, the Subject Mortgage and the Credit Agreement will be referred to as "the Subject Loan").  Doc. 22-5.  The Credit Agreement

---

[1] Plaintiff contends she did not sign the Subject Mortgage and her purported signature that appears on the Subject Mortgage is a forgery.  Doc. 33 at 4.

bears the signature of Cleveland Edwards.  *Id.*  On the same date and in conjunction with the Subject Loan, certain other documents were executed, each of which bear the signature of Marcia Edwards: a Notice of Right to Cancel, an Agreement to Provide Insurance, a Borrowers Limited Property Valuation and Title Agreement, and a Limited Power of Attorney (collectively, "the Closing Documents").  Doc. 22-6.  The Subject Mortgage and Closing Documents were notarized by Marie D. Olinger.  Doc. 22-4; Doc. 22-6.  Included with the Closing Documents is a Verification of Identification that was signed by the notary and correctly lists Marcia Edwards's Driver's License Number and Social Security Number.  Doc. 22-7; Doc. 22-15 at 16.

On March 9, 2007, Regions Bank, as successor by merger to AmSouth Bank, assigned the Subject Mortgage to RBC Centura Bank ("the Assignment"), which was recorded on March 4, 2007, in book 1372, page 536 of the Dallas County, Alabama probate records.  Doc. 22-8.  RBC Bank f/k/a RBC Centura Bank later merged with and into PNC Bank, National Association ("Defendant" or "PNC"), which was effective on March 2, 2012.  Doc. 22-1 at 4.

Cleveland Edwards passed away on March 13, 2016.  Doc. 22-9.

The final payment transaction date for the Subject Loan is March 15, 2016, when a regular monthly payment in the amount of $153.41 was paid.  Doc. 22-1 at 5.  After the final payment transaction, monthly account statements were sent to the Property address and informed the recipient payments were past due.  Doc. 22-10.

PNC, through its attorneys at Quintairos, Prieto, Wood and Boyer, P.A. ("QPWB"), sent Marcia Edwards a notice pursuant to the Fair Debt Collection Practices Act ("the FDCPA") that is dated February 4, 2020.  Doc. 22-11.  The notice advised Marcia Edwards payment was due for the Subject Loan, listed the amount due, and requested she notify PNC within thirty (30) days whether she disputed any portion of the amount due.  *Id.*

PNC, through its attorneys at QPWB, also sent a notice to Marcia Edwards that is dated February 4, 2020, which notified her of the amount due for the Subject Loan and the Property was scheduled be publicly sold on March 18, 2020, in front of the main entrance of the Selma, Alabama courthouse.  Doc. 22-12.  The notice included a copy of the notice of sale, which was published in the Selma Sun on February 6, 2020; February 13, 2020; and February 20, 2020.  *Id.*; Doc. 22-13.

On March 18, 2020, the Property was sold at a public auction that was held in front of the main entrance of the Selma, Alabama courthouse.  Doc. 22-14.  PNC was the highest bidder for the Property and purchased it for $41,676.48.  *Id.*

## B.    Procedural Background

This matter was originally filed by Plaintiff in the Circuit Court of Dallas County, Alabama on March 8, 2022.  Doc. 1-1 at 1-22.  In the Complaint, Plaintiff brings fifteen claims against Defendant: negligence (Count 1); wantonness (Count 2); unjust enrichment (Count 3); wrongful foreclosure (Count 4); slander of title (Count 5); breach of contract (Count 6); fraud (Count 7); false light (Count 8); defamation, libel, and slander (Count 9); violations of the Truth in Lending Act ("TILA") (Count 10); violations of the Real Estate Settlement Procedures Act ("RESPA") (Count 11); violations of the Fair Credit Reporting Act ("the FCRA") (Count 12); violations of the FDCPA (Count 13); quiet title (Count 14); and declaratory relief (Count 15).  *Id.*  On April 6, 2022, Defendant timely removed this matter to this Court and asserted federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1).  Doc. 1; *see generally* 28 U.S.C. § 1446 (describing the procedure for removal of civil actions).  On April 13, 2022, Defendant filed its Answer and Affirmative Defenses to the Complaint.  Doc. 3.

On June 20, 2023, Defendant filed its instant motion for summary judgment and incorporated brief in support.  Doc. 22.  Plaintiff and Defendant timely filed their respective

response and reply to the motion for summary judgment.  Docs. 33, 34; *see also* Docs. 23-32 (extending the deadline for Plaintiff to file her response to the motion for summary judgment). The motion for summary judgment is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

### III.    <u>STANDARD OF REVIEW</u>

A party in a lawsuit may move a court to enter summary judgment before trial.  FED. R. CIV. P. 56(a), (b).  Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'").  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[2]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party must support its assertion that there is no genuine issue of material fact by "citing

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169,

1181 (11th Cir. 2005) (citation omitted).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted).   In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case.  *Celotex*, 477 U.S. at 322.

## IV.   DISCUSSION AND ANALYSIS

In Plaintiff's response to the instant motion, she states she abandons and will not pursue her claims that she brings under TILA (Count 10) and the FCRA (Count 12) as well as her claims for negligence (Count 1), wantonness (Count 2), breach of contract (Count 6), fraud (Count 7), and unjust enrichment (Count 3).  Doc. 33 at 2 n.2.  Therefore, Defendant's motion for summary judgment as to those claims is **GRANTED**.

As to Plaintiff's claims that remain contested, the Court will address them in numerical order.

However, before the Court addresses the remaining claims, it will discuss Plaintiff's arguments that are the basis for many of her claims and are contested by Defendant: (1) her signature on the Subject Mortgage is a forgery, (2) the county courthouse at which the foreclosure sale occurred was closed by decree at the time of sale, and (3) Defendant is not the proper party to enforce the Subject Mortgage.

As to the whether the Subject Mortgage is a forgery, Defendant has submitted evidence that a mortgage that encumbered the Property was signed by Plaintiff and said signature was notarized.  Doc. 22-4.  The same notary who notarized the Subject Mortgage also notarized the Closing Documents, which were executed in conjunction with the Subject Loan and include a

verification of identity form that lists accurate identifying information for Plaintiff.  Doc. 22-4; Doc. 22-6; Doc. 22-7; Doc. 22-15 at 16.

Plaintiff's evidence to the contrary, that the signature that appears on the Subject Mortgage is not hers, is based on her deposition testimony and declaration.  Doc. 33-1 at 1-2; Doc. 33-6 at 16-18.  Plaintiff's declaration contains her typed signature, is unsworn, and does not substantially conform with the requirements for declarations pursuant to 28 U.S.C. § 1746 and Fed. R. Civ. P. 56.  Doc. 33-1.  However, Plaintiff's testimony is sworn to and is evidence that creates an issue of fact that the Court cannot decide through a summary judgment motion.  Doc. 33-6 at 14-18.

Despite this issue of fact, Defendant argues, under Alabama law, the evidence necessary to impeach a notary's certificate must be clear and convincing.  Doc. 34 at 3 (citing *Fid. & Deposit Co. of Md. v. Am. Consertech, Inc.*, Civ. Act. No. 06-0338-CG-M, 2008 U.S. Dist. LEXIS 66533 at *6-7, 2008 WL 1721867 at *2 (S.D. Ala. Apr. 9, 2008) [hereinafter *FDIC of Maryland*] (citing Alabama cases in support)).

However, *FDIC of Maryland* was before this Court on a motion for default judgment, for which a different standard than a motion for summary judgment is applied.  Indeed, in *FDIC of Maryland*, this Court stated it denied a previously filed motion for summary judgment in the matter because, construing all reasonable inferences in favor of the plaintiff, the plaintiff raised a question of fact as to whether her purported signatures on certain indemnity agreements were hers.  In support, the plaintiff submitted her and her husband's testimony in which they stated the signatures were not hers, which is similar to the facts and evidence that are presented in this case.

Therefore, construing all reasonable inferences in favor of the non-movant, whether Plaintiff signed the Subject Mortgage is a question of fact that cannot be decided at this stage of the litigation.

As to whether the Selma courthouse at which the foreclosure sale occurred was closed by decree at the time of sale, March 18, 2020,[3] Plaintiff submits a "Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak" from the President of the United States that was issued on March 13, 2020, and a proclamation from the Governor of Alabama that was signed and dated on March 13, 2020. Doc. 33-4; Doc. 33-5. Neither of the proclamations that Plaintiff submits directs government buildings to close but declare states of emergency and provide direction for certain agencies. *Id.*

In support of Defendant's argument that the Selma courthouse was not closed on the date of the foreclosure sale, it submits a "News Release" from the Dallas County Commission that declared the Selma courthouse would be closed indefinitely to all public access as of April 11, 2020, due to the COVID-19 epidemic. Doc. 34-1. Further, Defendant notes the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act") instituted a moratorium on foreclosure sales in response to the COVID-19 epidemic, but it was not signed into law until March 27, 2020, after the foreclosure sale in this matter. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281.

As to whether Defendant is the proper party to enforce the Subject Mortgage, Plaintiff notes the mortgagee of the Subject Mortgage was AmSouth Bank, not Defendant. Doc. 33 at 27-28. However, Defendant submits the declaration of its authorized representative, who states the Subject Mortgage was assigned to RBC Centura Bank from Regions Bank, as successor by merger to AmSouth Bank, then RBC Bank f/k/a RBC Centura Bank merged into Defendant, effective March 2, 2012. Doc. 22-1 at 4. Defendant also submits a copy of the recorded assignment of

---

[3] Plaintiff states the foreclosure sale was conducted on March 20, 2020, but the foreclosed deed states the sale occurred on March 18, 2020, as well as the notices of sale. *Compare* Doc. 33 at 27 *with* Doc. 22-12; Doc. 22-13; Doc. 22-14.

certain AmSouth Bank assets to RBC Centura Bank.  Doc. 22-8.  Therefore, Defendant has shown it is the proper party to enforce the terms of the Subject Mortgage.

Having addressed Plaintiff's main contentions, the Court will now address Plaintiff's remaining claims.

## A.    Wrongful Foreclosure (Count 4)

Defendant argues Plaintiff's wrongful foreclosure claim fails because she has not produced evidence that shows Defendant foreclosed on the Property for a purpose other than to secure the debt.  Doc. 22 at 9-10.

In response, Plaintiff argues she has alleged facts and provided substantial evidence to the Court that supports her claim PNC's foreclosure sale was improper because it was based on a forged mortgage.  Doc. 33 at 8-10.  Further, Plaintiff argues Defendant did not have the authority to foreclose on the Property because Defendant was not the original mortgagee of the Subject Mortgage and has not provided sufficient evidence to show it was the proper assignee.  *Id.*

> Alabama has long recognized a cause of action for "wrongful foreclosure" arising out of the exercise of a power-of-sale provision in a mortgage.  However, it has defined such a claim as one where "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor."  *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992).

*Harris v. Deutsche Bank Nat'l Tr. Co.*, 141 So. 3d 482, 492 (Ala. 2013) (emphasis in original) (quoting *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012)).

> Generally the purpose for which the power of sale is given being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power.  If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made.  *Wittmeier v. Tidwell*, 147 Ala. 354, 40 So. 963 [(1906)], and authorities there cited.  Or, as was said in the case of *Castlemen v. Knight*, 215 Ala. 429, 110 So. 911 [(1927)]:  "If he uses

the power to sell, which he gets for that purpose, for another purpose, from any ill
motive, to effect means and purposes of his own, or to serve the purposes of other
individuals, the court considers that to be what it calls a fraud in the exercise of the
power, because it is using the power for a purpose foreign to the legitimate purposes
for which it was intended."

*Jackson*, 90 So. 3d at 171-72 (alteration in original) (quoting *Paint Rock Props. v. Shewmake*, 393
So. 2d 982, 983-84 (Ala. 1981)).

Plaintiff generally alleges in her Complaint Defendant sold the Property for an improper
purpose because the sale was premised on a forged mortgage. Doc. 1-1 at 9. Indeed, Plaintiff
restates the same general argument in her response to the instant motion and does not specify an
ulterior purpose for the foreclosure sale of the Property by Defendant other than to secure the debt
that was secured by the Subject Mortgage. Doc. 33 at 8-10. Plaintiff's arguments that the Subject
Mortgage is a forged document that she did not sign and Defendant was not properly assigned the
Subject Mortgage may suggest the foreclosure was "wrongful" as that term is used in the
vernacular. However, under Alabama law, it is clear Plaintiff must identify a purpose for the
foreclosure sale other than to secure the debt that was secured by the Subject Mortgage. Further,
while the Alabama Supreme Court in *Jackson* suggests an improper purpose for a foreclosure sale
may be for the creditor to acquire the mortgaged property for itself, which occurred in this case,
Plaintiff neither alleges nor argues such was Defendant's purpose.

Therefore, Defendant's motion for summary judgment as to Plaintiff's wrongful
foreclosure claim is **GRANTED**.

## B.   Slander of Title (Count 5)

Defendant argues Plaintiff has not established the elements of a slander of title claim nor
sufficiently pled special damages. Doc. 22 at 10-11.

In response, Plaintiff argues she has sufficiently pled her claim for slander of title because

she alleges she is the fee simple owner of the Property and Defendant improperly, and wrongfully, foreclosed on a forged mortgage. Doc. 33 at 10-11. Further, Plaintiff argues the foreclosure deed is recorded in the land records of Dallas County, Alabama, which clouds her title to the Property. *Id.* at 11.

> Section 6-5-211, Ala. Code 1975, provides: "The owner of any estate in lands may commence an action for libelous or slanderous words falsely and maliciously impugning his title." The false and malicious statement "may consist of an assertion either that the plaintiff has no title to the property of which he is the ostensible owner, or that his title is defective, or that, as here, the defendant has himself an interest in or lien upon the property." *Coffman v. Henderson*, 9 Ala. App. 553, 557, 63 So. 808, 809 (1913).
>
> The elements of a slander of title action are:
>
>> "(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail)."
>>
>> *Merchants Nat'l Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (quoting *Womack v. McDonald*, 219 Ala. 75, 76-77, 121 So. 57, 59 (1929)).

*Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003).

> Here, at the least, Plaintiff has not sufficiently pled special damages.
>
> To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication "interrupted, or injuriously affected, some dealing of the plaintiff with his property" or caused the plaintiff to incur expenses "to relieve his right to the property from the damnifying effect of such false and malicious slander." *Ebersole v. Fields,* 181 Ala. 421, 62 So. 73, 75 (1913). Special damages must be "distinctly and particularly set out" in the complaint, and "[a]n allegation of loss in general terms is not sufficient." *Id.* (holding that a complaint averring that the defendants falsely slandered the plaintiff's title followed by general allegations of monetary loss was insufficient).

*Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N. D. Ala. 2013).

As to damages for Plaintiff's slander of title claim, she alleges in her Complaint, "[a]s the proximate cause of the Defendants' said slandering of the Plaintiff's title, she was caused to suffer injuries and damages and claims all damages allowable under law."  Doc. 1-1 at 9.  Plaintiff's damages claim does not detail how she was damaged and merely pleads injury in general terms, which does not satisfy the pleading standard for special damages.  Nor does Plaintiff submit admissible evidence to support her claim of special damages as a result of the alleged slander of her title.

Therefore, Plaintiff cannot satisfy the elements of her slander of title claim, and Defendant's motion as to that claim is **GRANTED**.

## C.      **False Light (Count 8)**

Defendant argues Plaintiff's false light claim fails because she cannot show an actionable publicity occurred.  Doc. 22 at 15-17.  Further, Defendant argues Plaintiff has not shown a false statement on which to base her false light claim since she admitted she was behind on payments for the Subject Loan when the foreclosure sale occurred.  *Id.*

In response, Plaintiff argues she has shown she did not owe money to Defendant and did not sign the Subject Mortgage.  Doc. 33 at 13-14.  Plaintiff argues Defendant's false statements were published in a newspaper and on the internet, and transmitted to credit agencies and her home insurance carrier.  *Id.*

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> >
> > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (citations and internal quotation marks omitted).

> A false-light claim does not require that the information made public be private; instead, the information made public must be *false*. *See* RESTATEMENT (SECOND) OF TORTS § 652E cmt.a. (1977).

> Additionally, it is integral to a false-light claim that the untrue information be publicly communicated Comment a. to § 652 states, "The rule stated here is, however, limited to the situation in which the plaintiff is given publicity. On what constitutes publicity and the publicity of application to a simple disclosure, *see* § 652D, Comment a., which is applicable to the rule stated here.
> Comment a. to § 652D states:

>> "Publicity," as it is used in this section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

>> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

> *See Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d at 739; *Johnston v. Fuller*, 706 So. 2d at 703; *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000).

*Id.* at 13.

Here, Plaintiff alleges Defendant communicated false information to the "national credit reporting media" and her homeowner insurance carrier and she argues the same in her response to

the instant motion.  Doc. 1-1 at 12; Doc. 33-13-14.  However, Plaintiff does not cite to evidence to support her allegations and arguments and, therefore, has not complied with the requirements of Fed. R. Civ. P. 56.  Further, Plaintiff does not show the allegedly false information was communicated to the public at large, beyond the "national credit reporting media" and her homeowner insurance carrier.

Therefore, Defendant's motion for summary judgment as to Plaintiff's false light claim is **GRANTED**.

## D.  Defamation, Libel, and Slander (Count 9)

Defendant argues Plaintiff fails to state a claim for defamation, libel, and slander because she admitted in her deposition she had not submitted a payment for the Subject Loan since 2016. Doc. 22 at 17-18.  Further, Defendant argues Plaintiff fails to show special damages as part of her defamation claims and the damages that she does claim are generic and do not constitute a distinct, material harm.  *Id.*

In response, Plaintiff argues she did not owe money to Defendant and the Subject Mortgage was a forgery, so when Defendant published in newspapers and on the internet information that stated she was in default of a debt that was secured by a mortgage and Plaintiff was entitled to foreclose on the mortgage, Defendant's actions meet the elements of a claim for defamation.  Doc. 33 at 11-13.  Further, Plaintiff argues she has submitted evidence of special damages because she testified she was denied credit after the alleged defamatory statements were made.  *Id.*

Regarding the elements of a cause of action for defamation, [the Alabama Supreme] Court has stated:

To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove

> special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).
>
> One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true.  Stated otherwise, truth is a complete and absolute defense to defamation.
>
> To constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude . . . .
>
> This distinction, however, does not deny the right to maintain an action for slander founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though it falls short of imputing the commission of such crime or misdemeanor.  In such case the law pronounces the words actionable per quod only, and the plaintiff must allege and prove special damages as an element of the cause of action.
>
> Even when the statement is not actionable per se . . . a plaintiff may maintain an action for slander [per quod] founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt if that plaintiff alleges and proves special damages.  Special damages are the material harms that are the intended result or natural consequence of the slanderous statement, and the general rule is that they are limited to material loss capable of being measured in money.

*Reg'l Prime Television v. South*, -- So. 3d --, 2024 Ala. LEXIS 69, at *73-75, 2024 WL 997698, at *24-25 (Ala. March 8, 2024) (alterations in original retained) (internal citations and quotation marks omitted) (original formatting altered for readability).

As to Defendant's argument that Plaintiff fails to state a claim for defamation because she admitted in her deposition testimony she had not submitted a payment for the Subject Loan since 2016, said argument does not account for the fact that the issue of whether the Subject Mortgage is a forgery remains a question of fact.

As to Defendant's argument that Plaintiff fails to properly support her contention that she suffered special damages as part of her defamation claims, Plaintiff argues she was denied credit shortly after the allegedly defamatory statement, but the Plaintiff has not submitted admissible evidence to support that assertion.  The Court's review of Plaintiff's sworn testimony and unsworn

declaration that were submitted with Plaintiff's response to the instant motion shows she did not state she was denied credit as a result of the allegedly defamatory statement.

Therefore, Plaintiff has not properly shown she is entitled to special damages as a result of the alleged defamation, and Defendant's motion for summary judgment as to Plaintiff's claims of defamation, libel, and slander is **GRANTED**.

**E.    Violations of RESPA (Count 11)**

Defendant argues Plaintiff's RESPA claim fails because she fails to sufficiently allege she submitted a proper Qualified Written Request ("QWR") to Defendant.  Doc. 22 at 20-22.  Further, Defendant argues Plaintiff fails to sufficiently allege damages and has not submitted evidence that she sent Defendant a proper QWR.  *Id.*

In response, Plaintiff argues she testified at her deposition that she or her attorney sent Defendant a proper QWR by mail.  Doc. 33 at 21-25.  Plaintiff attaches to her response to the instant motion two purported QWRs.  Doc. 33-2; Doc. 33-3.  Further, Plaintiff argues the "actual damages" that attend a RESPA violation are not defined, Defendant has failed to show she did not suffer "actual damages," and her damages related to the foreclosure of the Property by Defendant. Doc. 33 at 21-25.

> RESPA imposes certain duties on loan "servicers" for the purpose of protecting consumers. . . . A borrower seeking information about a loan can contact the loan servicer by sending a QWR, which is a written correspondence that (1) "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  [12 U.S.C.] § 2605(e)(1)(B).
>
> When a loan servicer receives a QWR from a borrower, the loan servicer must first provide to the borrower, within five days, a written response acknowledging receipt of the QWR.  *Id.* § 2605(e)(1)(A).  The loan servicer must then, within thirty days of receiving the QWR, send the borrower a written response explaining any corrections to the borrower's loan account, clarifying the reasons that the loan

servicer believes the borrower's account is accurate, or providing the information the borrower requested. *Id.* § 2605(e)(2). A borrower who shows that a loan servicer failed to carry out its duties under this provision may be entitled to actual and/or statutory damages. *Id.* § 2605(f). [The Eleventh Circuit] has held that "damages are an essential element in pleading a RESPA claim." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).

*Thomas v. US Bank N.A.*, 675 F. App'x 892, 899 (11th Cir. 2017) (per curiam).

It is unclear from Plaintiff's filings whether she demands actual and/or statutory damages from Defendant for its alleged violation of RESPA. Doc. 1-1 at 17. The portion of Plaintiff's Complaint that alleges a RESPA violation does not demand either actual or statutory damages, and the concluding demand section of her Complaint only mentions actual damages. *Id.* at 22. Further, Plaintiff's response to the instant motion argues only she has shown she is entitled to actual damages and does not mention statutory damages. Doc. 33 at 21-25.

As to what constitutes "actual damages" under RESPA, the Eleventh Circuit has stated:

We have not defined "actual damages" under RESPA, and that term is not defined in the statute itself. *See* 12 U.S.C. § 2605(f)(1)(A). Nor have we applied a consistent definition of that term across statutes. *Compare Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872–73 (11th Cir. 2009) (holding that, under the Privacy Act, 5 U.S.C. § 552a(g)(4), "actual damages" means "pecuniary losses" only, and does not include recovery for "mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries"); *with Banai v. Sec'y U.S. Dep't of Hous. & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1207 (11th Cir.1997) (stating that the Fair Housing Act's allowance for "actual damages," 42 U.S.C. § 3612(g)(3), includes compensation for "anger, embarrassment, and emotional distress"). Because it is not necessary to the result, we construe "actual damages" broadly and assume, but do not decide, that plaintiffs can recover both pecuniary losses and non-pecuniary losses under RESPA. *See Renfroe, LLC*, 822 F.3d at 1244 (RESPA is a "remedial consumer-protection statute" that "should be construed liberally in order to best serve Congress's intent").

For actual damages to be "a result of" a servicer's noncompliance, the "plaintiff must present evidence to establish a causal link between the [servicer's] noncompliance and [her] damages." *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027–28 (11th Cir.2001) (*en banc*) (interpreting the Truth in Lending Act ("TILA"), which similarly allows for recovery of "actual damage sustained . . . as a result of the failure" to comply with the TILA, 15 U.S.C. § 1640(a)(1)).

*Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 982 (11th Cir. 2017).

Here, Plaintiff alleges the following in her Complaint:

> Defendants' failure to acknowledge and properly respond to the QWR request is a violation of RESPA or the Dodd-Frank Act.  Because of said violations of said acts, the Plaintiff was damaged because they were not informed of the information regarding their loan.  Because the Defendants failed to give this information to Edwards, she was not able to stop the foreclosure of their home.  Accordingly, Edwards is entitled to damages from the Defendants.  Plaintiff suffered damages by Defendants' failure to comply with the RESPA law because they were unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure sale was set.

Doc. 1-1 at 17.  In Plaintiff's response to the instant motion, she echoes her claim from her Complaint that Defendant's RESPA violation resulted in the foreclosure of the Subject Mortgage. Defendant argues Plaintiff testified in her deposition she did not intend to pay the amount due on the Subject Loan and Plaintiff does not cite evidence that shows she intended to make payments for the Subject Loan to avoid the foreclosure.  In fact, Plaintiff's claims and testimony show she was not a signatory to the Subject Loan and maintains her signature on the Subject Mortgage is a forgery.  So, while Defendant's alleged noncompliance with RESPA hypothetically could have led to the foreclosure sale, under a summary judgment standard, Plaintiff is required to provide admissible evidence to prove that causal link, which she has not.  Accordingly, even viewing the evidence and all factual inferences therefrom in the light most favorable to Plaintiff, the Court is unable to find her alleged damages were a result of the alleged RESPA violation.

Therefore, Defendant's motion for summary judgment as to Plaintiff's RESPA claim is **GRANTED**.

## F.      Violations of the FDCPA (Count 13)

Defendant argues Plaintiff's FDCPA claims are barred by the applicable statute of limitations because the foreclosure sale in this case occurred nearly two (2) years before she filed

the instant action.  Doc. 22 at 23.

In response, Plaintiff does not address Defendant's argument that her FDCPA claims are barred by the applicable statute of limitations.  Doc. 33 at 14-21.  Instead, Plaintiff argues Defendant is a "debt collector" for purposes of the FDCPA and she sufficiently pled a cause of action under 15 U.S.C. § 1692(f)(6) for a wrongful nonjudicial foreclosure.  *Id.*

The FDCPA prohibits the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest.'  15 U.S.C. § 1692f(6)(A).  A claim that alleges a violation of the FDCPA must be filed "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened."  *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019).

Here, in the Complaint, Plaintiff does not allege specific facts in the section for her FDCPA claim:

> Within the last 12 months, Defendants attempted to collect amounts not owed under the mortgage contract.  Within the last 12 months, Defendants sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law in violation of the Act § 1692f(1).  Within the last 12 months, Defendants threatened legal action that was either not permitted or not actually contemplated in violation of the Act § 1692e.  Within the last 12 months, Defendants communicated with third parties: revealing or discussing the nature of debts with third parties in violation of the Act § 1692c.  Defendants within the last 12 months, failed to identify themselves and notify the Plaintiff in every communication, that the communication was from a debt collector in violation of the Act § 1692e(11).  Within the last 12 months Defendants falsely stated the amount of the debt owed in violation of § 1692e2a.

Doc. 1-1 at 20.  However, the final nonjudicial action that Defendant took in this case was the March 18, 2020, foreclosure sale of the Property.  *See* Doc. 1-1 at 6.  Plaintiff did not file her instant action in the state circuit court until March 8, 2022, nearly two years after the last possible

qualifying event that might serve as the basis for her FDCPA claim and well past the one-year statute of limitations for such claims.

Therefore, Defendant's motion for summary judgment as to Plaintiff's FDCPA claims is **GRANTED**.

## G.    Quiet Title (Count 14)

Defendant argues Plaintiff's quiet title claim fails because her sole argument in response is her signature on the Subject Mortgage is a forgery, while Defendant has submitted evidence that shows Plaintiff's signature was notarized when the Subject Mortgage was signed, she signed multiple other documents as part of the Subject Loan, and her social security and driver's license numbers were verified when she allegedly signed the Subject Mortgage.   Doc. 22 at 23-24. Further, Defendant argues Plaintiff has not provided an explanation or evidence of who she alleges committed the fraud or forgery of her signature.  *Id.*

In response, Plaintiff argues she testified at her deposition she did not sign the Subject Mortgage and she is entitled to the remedy of quiet title pursuant to Alabama law.  Doc. 33 at 25-26.

As to an action for quiet title, Alabama law provides:

When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right or as personal representative or guardian, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof, or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim, or encumbrance, such person or his personal representative or guardian, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same.

ALA. CODE § 6-6-540.

The Alabama Supreme Court has stated:

"The purpose of [an action to quiet title] is not to invest the court with jurisdiction to sell or dispose of the title to the land, but merely to determine and settle [title] as between the [plaintiff] and the defendant[]." *Dake v. Inglis*, 239 Ala. 241, 243, 194 So. 673, 674 (1940) (citing *Grayson v. Muckleroy*, 220 Ala. 182, 124 So. 217 (1929); and *Venable v. Turner*, 236 Ala. 483, 183 So. 644 (1938)).  This Court has applied a burden-shifting analysis to actions to quiet title under § 6-6-540, Ala. Code 1975:

> "Under a statutory bill to quiet title, where it is shown that [the plaintiff] is in peaceable possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title, a prima facie case is made out, entitling the [plaintiff] to relief, and the burden is then upon [the defendant] to establish his claim to the land.  When the [defendant] shows legal title to the land, the burden of avoiding it by showing superior title by adverse possession (or by a better paper title) shifts to the [plaintiff]."

*Wiggins v. Stapleton Baptist Church*, 282 Ala. 255, 257, 210 So. 2d 814, 816-17 (1968) (citing *Stewart v. Childress*, 269 Ala. 87, 92, 111 So. 2d 8 (1959); and *Webb v. King*, 268 Ala. 282, 105 So. 2d 653 (1958)).  *See also Machen v. Wilder*, 283 Ala. 205, 208, 215 So. 2d 282, 284 (1968) ("In a statutory suit to quiet title, a prima facie case is made where it is shown that the [plaintiff] is in the peaceful possession of the land, either actual or constructive at the time of the filing of the bill and that there was no suit pending to test the validity of title, and the burden is then upon the [defendant] to establish his claim to the land. . . . But when the [defendant] shows legal title to the land, the burden of avoiding it by showing superior title . . . shifts to the [plaintiff].").

*Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass'n*, 947 So. 2d 1031,

1036-37 (Ala. 2006) [hereinafter, *Woodland Grove*].

Whether a plaintiff is in peaceable possession is a question of fact, *Price v. Robinson*, 242 Ala. [626,] 627, 7 So. 2d [568,] 569 [(1942)], that is evaluated as of the date the action is commenced.  *Davidson v. Blackwood*, 250 Ala. 263, 34 So. 2d 205 (1948).  "One is in peaceable possession as opposed to scrambling possession when at the time of the suit no other party is denying the *fact* of complainant's possession.  If both parties claim actual possession or are scrambling for it, then the possession is not peaceable." *Denson* [*v. Gibson*], 392 So. 2d [523,] 524-25 [(Ala. 1980)].  "The distinction between peaceable possession and scrambling possession is that 'in the former, an adverse party may be denying the [plaintiff's] right to possession, but in the latter there is a denial of the fact of his actual possession.'" *Cullman Wholesale* [*Inc. v. Simmons*], 592 So. 2d [1032,] 1034 (Ala. 1992) (quoting *Adams v. Bethany Church*, 380 So. 2d 788, 791 (Ala. 1980)).

*Woodland Grove*, 947 So. 2d at 1038-39.

As to the first step of the quiet title burden-shifting analysis, Plaintiff alleges she resides at the Property and has resided there for thirty-five (35) years, and her testimony supports her allegations. Defendant does not contest whether Plaintiff maintains actual possession of the Property. Therefore, Plaintiff has supported her prima facie case that she peaceably possessed the Property when this action commenced, so the burden shifts to Defendant to establish its claim to the Property.

Defendant has submitted evidence that shows it was the proper assignee of the Subject Loan and the Subject Mortgage, the Subject Loan was secured by the Subject Mortgage, payment for the Subject Loan became overdue, then Defendant proceeded to secure the debt owed through a nonjudicial foreclosure sale of the Property at which Defendant purchased the Property. The Alabama Supreme Court has stated "legal title can be shown by a valid deed," which includes a foreclosure deed. *Woodland Grove*, 947 So. 2d at 1041 (citing *Mid-State Homes, Inc. v. Butler*, 253 So. 2d 511 (1971)). Therefore, Defendant has produced sufficient evidence that shows its claim to the Property and the burden shifts back to Plaintiff to show superior title to the Property.

As the Court discussed, Plaintiff has raised an issue of fact as to authenticity of her purported signature on the Subject Mortgage, which, in turn, clouds the validity of Defendant's claim to the Property and its right to seek a foreclosure sale of such.

Therefore, Defendant's motion for summary judgment as to Plaintiff's quiet title claim is **DENIED**.

## H.    Declaratory Relief (Count 15)

In Plaintiff's Complaint, she requests declaratory relief:

> Defendants breached the contract with [Plaintiff] by failing to follow the terms for notice requirements agreed to in the mortgage contract as well as payment application. Defendants never sent the Plaintiff the required notices and failed to properly apply their payments. As a result, [Plaintiff] is entitled to the following declaratory relief: (1) An Order declaring that they are not in default of their mortgage agreement and declaring the notice of default is null and void. (2) An order declaring that Defendants have no right or authority to foreclose on [Plaintiff's] property. (3) An Order prohibiting Defendants from foreclosing on [Plaintiff's] property.

Doc. 1-1 at 22.

Defendant argues Plaintiff's claim for declaratory relief is similar to her breach of contract claim, which in both she argues Defendant did not comply with the terms of the contract, specifically the provisions as to the application of payments and notice. Doc. 22 at 11-13, 24. Defendant argues the terms of the mortgage contract that Plaintiff references in her Complaint are not found in the Subject Mortgage. *Id.* at 11. Defendant also argues Plaintiff did not perform under the contract because she testified at her deposition she did not make required monthly payments under the contract for over three (3) years by the time the foreclosure sale occurred. *Id.* at 12. As to Plaintiff's payment arguments, Defendant argues Plaintiff testified she did not make direct payments to Defendant but would give money to her husband for his payments for the Subject Loan and Plaintiff testified she never made a payment to Defendant that was either rejected or returned to her. *Id.* As to Plaintiff's notice arguments, Defendant argues it complied with the notice requirements that are provided in the Subject Mortgage and prescribed by Alabama law. *Id.* at 12-13.

In response, Plaintiff argues she did not sign the Subject Mortgage and her purported signature that appears on the Subject Mortgage is a forgery. Doc. 33 at 26.

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

As the Court discussed, Plaintiff has raised an issue of fact as to authenticity of her purported signature on the Subject Mortgage, which, in turn, clouds the validity of Defendant's claim to the Property and its right to seek a foreclosure sale of such.

Therefore, Defendant's motion for summary judgment as to Plaintiff's claim for declaratory relief is **DENIED**.

### V. <u>CONCLUSION</u>

Accordingly, Defendant's motion for summary judgment (Doc. 22) is **GRANTED in part and DENIED in part**.  The motion (Doc. 22) is **GRANTED** as to Plaintiff's claims of negligence (Count 1); wantonness (Count 2); unjust enrichment (Count 3); wrongful foreclosure (Count 4); slander of title (Count 5); breach of contract (Count 6); fraud (Count 7); false light (Count 8); defamation, libel, and slander (Count 9); violations of TILA (Count 10); violations of RESPA (Count 11); violations of the FCRA (Count 12); and violations of the FDCPA (Count 13).  The motion (Doc. 22) is **DENIED** as to Plaintiff's remaining claims.

**DONE** and **ORDERED** this 22nd day of March 2024.

<u>/s/ Terry F. Moorer</u>
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE